UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBBY WAGUESPACK | |
| | CIVIL ACTION |
| VERSUS | |
| | NO. 16-241-JJB-RLB |
| MEDTRONIC, INC., ET AL. | |

AND

| | |
|---|---|
| STEPHEN POWELL | |
| | CIVIL ACTION |
| VERSUS | |
| | NO. 16-242-JJB-EWD |
| MEDTRONIC, INC., ET AL. | |

AND

| | |
|---|---|
| LLOYD LILE LINDSEY, III | |
| | CIVIL ACTION |
| VERSUS | |
| | NO. 16-243-JJB-RLB |
| MEDTRONIC, INC., ET AL. | |

## **RULING**

These matters are before the Court on two motions. The first is a Motion for Preliminary Injunction (Doc. 4) brought by the Plaintiffs.[1] The Defendants[2] have filed an Opposition (Doc. 22). The second motion is a Motion to Transfer (Doc. 17) brought by Defendants, to which Plaintiffs filed an Opposition (Doc. 31). Pursuant to this Court's Order, the parties filed Supplemental Memoranda (Docs. 32 & 37). The Court previously issued a Temporary Restraining Order (Doc. 18), and held a hearing on the matter on May 4, 2016. After the presentation of arguments, the Court took the matter under advisement. Jurisdiction exists pursuant to 28 U.S.C.

---

[1] This dispute involves three separate cases: *Waguespack v. Medtronic, Inc., et al.*, 3:16-CV-00241-JJB-RLB; *Powell v. Medtronic, Inc., et al.*, 3:16-cv-00242-JJB-EWD; *Lindsey v. Medtronic, Inc., et al.*, 3:16-cv-00243-JJB-RLB. Because the motions for preliminary injunction and motions to transfer are substantially similar between these three cases, this Court will refer to the briefs contained in plaintiff Waguespack's case as representative of all three.
[2] The defendants, Medtronic Sofamor Danek USA, Inc. ("MSDU"); Medtronic, Inc.; and Medtronic Sofamor Danek, Inc., are collectively referred to herein interchangeably as "Medtronic" or "MSDU."

1

§ 1332. For the reasons stated herein, Plaintiffs' Motion for Preliminary Injunction (16-cv-241: Doc. 4; 16-cv-242: Doc. 5; 16-cv-243: Doc. 5) is **GRANTED**, and Defendants' Motion to Transfer (16-cv-241: Doc. 17; 16-cv-242: Doc. 10; 16-cv-243: Doc. 19) is **DENIED**.

### I.  BACKGROUND

Plaintiffs Robby J. Waguespack ("Waguespack"), Stephen Powell ("Powell"), and Lloyd Lile Lindsey, III ("Lindsey") (collectively, "Plaintiffs" or "Louisiana Representatives") were sales employees for MSDU. MSDU—a Medtronic subsidiary—is a medical device company based out of Memphis, Tennessee, that operates Medtronic's spine business in Louisiana. While working for MSDU, Waguespack was a District Sales Manager with responsibility for all of Louisiana (except the Shreveport area), the southern one-third of Mississippi, and Beaumont, Texas. Powell and Lindsey were Sales Representatives in Baton Rouge, Louisiana.

As a condition of employment, Medtronic required Plaintiffs to sign Employment Agreements. The Employment Agreements contains a variety of restrictive covenants, including provisions that purport to prohibit Plaintiffs from competing with "MEDTRONIC" or soliciting its customers for a period of one year after the termination of their employment. The Employment Agreements also contain choice of law, choice of forum, and related clauses that essentially require the Employment Agreements to be interpreted under Minnesota law and that any litigation related to the agreement be prosecuted in a state court in Minnesota.[3]

---

[3] In Section 7.3 of the Agreements, Waguespack, Powell, and Lindsey agreed that "[a]ny dispute arising out of or related to this Agreement, or any breach or alleged breach hereof, shall be exclusively decided by a state court in the State of Minnesota," and further agreed to irrevocably waive any rights to have any disputes between them and Medtronic arising out of or related to the Agreement decided in any jurisdiction or venue other than a state court in the State of Minnesota. *La. Employment Agreement* 9, Doc. 32-2.

In Section 7.3 of the Agreements, Waguespack, Powell, and Lindsey also "irrevocably consent[ed] to the personal jurisdiction of the state courts in the State of Minnesota for the purposes of any action arising out of or related to this Agreement." *Id.*

On March 28, 2016, Plaintiffs resigned from their positions with Medtronic, and accepted employment with K2M, Inc. ("K2M"), a competing medical device company that sells spinal products and surgical implants in Louisiana. After Plaintiffs left Medtronic, they filed suit in the 19th Judicial District Court for the Parish of East Baton Rouge seeking a declaratory judgment that the choice of forum, choice of law, non-competition, and non-solicitation provisions in their Employment Agreements (the "Employment Agreements") are null, void, and unenforceable.[4]

A week after being served with this suit, the defendants filed a second lawsuit ("the Minnesota Action") in Minnesota state court naming Waguespack, K2M, Lindsey, and Powell as defendants. In the Minnesota Action, Medtronic asserted claims for declaratory relief and breach of contract. The Minnesota Action has been removed to federal court,[5] and Medtronic has moved to remand that case to Minnesota state court.

## II.   FIRST-FILED RULE

Because the first-filed rule gives the court discretion to dismiss a case in its entirety, and thus be dispositive of the remaining issues presented in these motions, it is logical to address the this issue first.[6] This Court adequately summarized the law relating to the first-filed rule in a recent case:

---

In Section 7.4 of the Agreements, Waguespack, Powell, and Lindsey each agreed "not to sue MEDTRONIC in any jurisdiction other than a state court in the State of Minnesota for the purposes of any action arising out of or related to this Agreement," and further agreed "not to assist, aid, abet, encourage, be a party to, or participate in the commencement or prosecution of any lawsuit or action by any third party arising out of or related to this Agreement in any jurisdiction or venue other than a state court in the State of Minnesota." *Id.*

[4] K2M subsequently intervened and joined in Plaintiffs' declaratory judgment claims.

[5] The Minnesota Action pending in the District of Minnesota is captioned: *Medtronic, Inc., et al. v. Powell, et al.*, No. 0:16-cv-00918-JNE-TNL.

[6] Courts in the Fifth Circuit have addressed the first-filed rule in various ways. For example, one court suggested that the first-filed rule is dispositive of all other issues. *Marks v. Mackey*, No. 6:14-CV-00441, 2014 WL 3530137, at *2–5 (W.D. La. July 15, 2014) (ruling that the district court was the second-filed court and stayed the case, which thereby pretermitted questions of personal jurisdiction, improper venue, and a motion to transfer pursuant to 28 U.S.C. § 1404(a)). A different Louisiana district court analyzed the first-filed rule as being "[e]ncompassed within the judicial economy factor" of the § 1404(a) analysis. *Fl. Marine Transporters v. Lawson & Lawson Towing Co.*, No. 00-2602, 2001 WL 1018364, at *3 (E.D. La. Aug. 31, 2001). This Court believes the first-filed rule is more closely related to

> The Fifth Circuit has "long advocated that district courts exercise their discretion to avoid duplication of proceedings where related claims are being litigated in different districts." *Marks v. Mackey*, No. 6:14-CV-00441, 2014 WL 3530137, at *2 (W.D. La. July 15, 2014) (quoting *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985)). Accordingly, "the court with prior jurisdiction over the common subject matter should resolve all issues presented in related actions." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA; AFL-CIO*, 751 F.2d 721, 730 (5th Cir. 1985) (internal quotation omitted). As a matter of federal comity, the first-filed rule provides that "where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit[.]" *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005); *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) ("Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap."). A decision to apply the first-filed rule rests on two questions: "(1) whether the two pending actions are so duplicative that they involve substantially overlapping issues such that one court should decide both, and if so, (2) which of the two courts should take the case." *Mackey*, 2014 WL 3530137 at *3.

*InforMD, L.L.C. v. DocRx, Inc. et al.*, Civil Action No. 13-533-JJB-SCR, Doc. 73 at *3 (M.D. La. Aug. 31, 2015). In the instant case, the parties do not dispute that the action filed in this Court substantially overlaps with the Minnesota Action. It is also undisputed that Plaintiffs filed the declaratory judgment suit in Louisiana before the defendants filed their complaint in the Minnesota case.[7] The Court agrees that the substantive issues and parties are nearly identical and that this Court was seized of the action over a week before the Minnesota Action commenced. The parties dispute, however, which court should "take the case."

In answering which Court should take the case, "[t]he Fifth Circuit adheres to the general rule that the court in which the action is first filed is the appropriate court to determine whether

---

jurisdiction and abstention doctrines than the § 1404(a) analysis on a motion to transfer because the first-filed rule involves the Court's authority to hear or dismiss a case. Therefore, the Court believes the first-filed rule is best addressed as a threshold issue.

[7] Plaintiffs filed the declaratory judgment petition in Louisiana state court on March 28, 2016, eight days before Medtronic filed its suit in Minnesota state court. Although the Minnesota case was removed to federal court prior to removal of the Louisiana case, the relevant benchmark for determining which suit was first filed is the date of filing in state court. *E.g.*, *Poche v. Geo-Ram, Inc.*, No. 96-1437, 1996 WL 371679, at *2 (E.D. La. July 2, 1996).

4

subsequently filed cases involving substantially similar issues should proceed." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). The first-filed rule does not apply, however, when it appears the earlier filed anticipatory suit was merely a forum-shopping maneuver. *Fl. Marine Transporters v. Lawson & Lawson Towing Co.*, No. 00-2602, 2001 WL 1018364, at *3 (E.D. La. Aug. 31, 2001). However, the cases cited by Defendants in support of this exception are factually distinguishable—the party seeking a declaratory judgment in those cases were provided notice of litigation from the opposing party.[8] Here, Plaintiffs were not provided notice of Defendants' intent to file suit, and therefore the exception relied on by

---

[8] *Fl. Marine Transporters*, 2001 WL 1018364, at *4 ("While it is true that the Louisiana case was filed first, it appears it was filed only after (and immediately after) Riverway *notified* Florida Marine that it was rejecting its settlement offer and would file suit in Missouri." (emphasis added)); *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 746–47 (7th Cir. 1987) (stating that the plaintiff filed its declaratory judgment action on the same day it *received a letter from the defendant* explaining that it was left with "no alternative but to file an action to protect its interests"); *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 977 (3d Cir. 1988) ("[T]he EEOC *threatened to institute a subpoena enforcement proceeding* within twenty days unless the University responded [to its subpoena]. Instead of complying with the ruling or notifying the EEOC of its intent to contest the ruling, the University filed suit in the District of Columbia three days before the expiration of the grace period during which the EEOC stated it would not resort to a judicial enforcement proceeding." (emphasis added); *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 600–01 (5th Cir. 1983) (discussing how the plaintiff filed a declaratory judgment action after granting the defendant's request for an extension of time to file suit under the relevant insurance contract, and that such suit was filed before the end of that time extension); *Excel Music, Inc. v. Simone*, Civ. A. No. 95-3626, 1996 WL 5708, *1–2 (E.D. La. Jan. 5, 1996) (stating that the plaintiff filed its declaratory judgment suit after *receiving a letter from the defendant* warning that unless the plaintiff complied with a court-ordered injunction within five days, the defendant would file suit); *Amerada Petrol. Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967) (affirming the district court's ruling, which concluded that "the filing of the declaratory judgment action . . . was *triggered by the letter stating that Amerada would be sued* by Mrs. Marshall if it did not appear in the District of Columbia as party defendant along with Continental and Marathon" (emphasis added)). Additionally, two of the cases Defendants cited are also distinguishable because they involve the relationship between a declaratory judgment suit and a suit for patent infringement—"Numerous cases have held that actions for infringement take precedence over declaratory judgment actions, even where later-filed, based on the policy that a party whose rights are being infringed should have the privilege of electing where to enforce its rights." *Sports Innovations, Inc. v. Specialized Bicycle Components, Inc.*, No. CIV. A. 00-3272, 2001 WL 406264, * 3 (E.D. La. Apr. 18, 2001); *see Tempco*, 819 F.2d at 749 ("Where, as here, the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed four days later."). Finally, two cases are also distinguishable because the first-filed party used deceptive practices to prevent the opposing party from filing first. *Mission Ins.*, 706 F.2d at 601 (discussing the defendant's representation that they were considering the merits of the claim and allowing an extension of time to file suit, and stating that "[b]ut for these representations and implications, Defendant would have been the first to file an action presenting the same issues"); *see Pac. Emp'rs Ins., Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801, 804 (5th Cir. 1985) (stating that the district court focused on "Pacific's unexplained delay in serving the defendant [with process in the E.D. Louisiana suit] until after the second suit was filed [in Belgium]. The court concluded that the delay indicated an abuse of judicial procedure in trying to control the forum of the plaintiff's action").

Defendants does not apply. Accordingly, as the first-filed court, the Middle District of Louisiana will not dismiss or stay the pending case.

### III.   MOTION FOR PRELIMINARY INJUNCTION

In order to be entitled to injunctive relief, a party must demonstrate: (1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury if the injunction is not granted; (3) that the irreparable injury outweighs the harm to the defendant; and (4) that granting the preliminary injunction will not disserve the public interest. *Cardoni v. Prosperity Bank*, 805 F.3d 573, 579 (5th Cir. 2015).

#### A.   Likelihood of Success on the Merits

Plaintiffs argue that they have a likelihood of success on the merits of their declaratory judgment claims because: (1) the choice of forum and choice of law clauses in the Employment Agreements are null and void pursuant to La. R.S. § 23:921(A)(2); and (2) the Employment Agreements' non-competition clauses are unenforceable because they fail to comply with the requirements of La. R.S. § 23:921(C).

Defendants make three independent arguments as to why Plaintiffs are unlikely to succeed on the merits: (1) as applied, § 921 prohibits Defendants from prosecuting the Minnesota Action, which violates their First Amendment rights under the *Noerr-Pennington* doctrine; (2) as applied, § 921 violates the Dormant Commerce Clause because the statute constitutes an impermissible burden on interstate commerce; and (3) the non-competition clauses are valid and enforceable under § 921(C).

The likelihood of success on the merits centrally turns on which states' law applies—if Louisiana's law applies regarding the enforceability of the non-competition agreements, then Plaintiffs may have a chance of success on the merits. On the other hand, both parties seem to

agree that if Minnesota law applies, Defendants will win because the non-competition agreements will be deemed enforceable according to Minnesota law. With the importance of this determination in mind, it is logical to first address the choice of law issue that is central to this case before addressing the other issues raised.

### 1.    *Choice of Law and Choice of Forum Clauses*

Because this is a diversity case, the forum state of Louisiana provides the law that governs this choice-of-law analysis. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Cardoni*, 805 F.3d at 573. Louisiana law permits parties to stipulate in their contracts which state's laws are to govern them. *NCH Corp. v. Broyles*, 749 F.2d 247, 250 (5th Cir. 1985) (summarizing Louisiana choice of law provisions as interpreted by Louisiana courts). Such contractual stipulations are not honored, however, when doing so would "contravene a strong public policy of the state whose law would otherwise be applicable."[9] La. Civ. Code art. 3540; *Broyles*, 749 F.2d at 250.

The Court agrees with Plaintiffs that Louisiana has a strong public policy against forum selection and choice of law clauses in employment contracts as indicated by both the text of § 921(A)(2)[10] and the Louisiana Supreme Court's interpretations.[11] The text of § 921(A)(2)

---

[9] Defendants have not argued that Minnesota law would otherwise be applicable. Therefore, the Court assumes, for the purposes of this ruling, that Louisiana law would "otherwise be applicable" to this case within the meaning of Article 3540.

[10] La. R.S. § 23:921(A)(2) provides:
> The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment . . . shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

[11] The Louisiana Supreme Court has explained:
> Louisiana Revised Statute 23:921(A)(2) is a strong expression of Louisiana public policy concerning forum selection clauses wherein the legislature clearly intended to allow Louisiana courts to adjudicate the claims of plaintiffs who have properly invoked their jurisdiction. Thus, suits validly filed in this state can remain here, despite forum selection clauses to the contrary unless the

7

prohibits forum selection and choice of law clauses in employment contracts unless the clauses are expressly, knowingly and voluntarily entered into and ratified after the occurrence of injury. The Plaintiffs in this matter have not ratified the forum selection or choice of law clauses after resigning from Medtronic. Because there was no ratification, enforcement of those clauses would otherwise be contrary to Louisiana's strong public policy. Therefore, Plaintiffs have demonstrated that they are likely to succeed in having the forum selection and choice of law clauses declared invalid, and that Louisiana law will govern this case. This decision is in accord with several other federal courts that have consistently invalidated contractual choice of forum and choice of law clauses in employment agreements based on § 23:921(A)(2). *See, e.g.*, *Broyles*, 749 at 251; *Bell v. L.P. Brown Co.*, Civil Action No. 14-02772, 2015 WL 429973, at *5–6 (W.D. La. Feb. 2, 2015); *Westbrook v. Pike Elec., L.L.C.*, 799 F. Supp. 2d 665, 669–70 (E.D. La. June 30, 2011).

    a)  *Constitutionality of La. R.S. § 23:921*

Defendants argue against the likelihood of success on the merits by arguing that, as applied, § 921(A) violates (1) their First Amendment rights to petition the government for redress of grievances, and (2) the dormant Commerce Clause.

First, Defendants argue that as applied, § 921(A)(2) violates their First Amendment rights. According to Defendants, both parties have a First Amendment right, under the *Noerr-Pennington* doctrine, to "petition the Government for redress of grievances," including a constitutional right to file a lawsuit "wherever they choose." *Defs.' Opp'n* 8–9, Doc. 9; *Defs.' Suppl. Mem.* 4–5, Doc.

---

clause was expressly, knowingly, and voluntarily entered into and ratified after the occurrence of the incident which gives rise to the litigation. The legislature has expressed Louisiana's strong policy with a legitimate concern for providing justice to those parties who would otherwise be entitled to adjudication in a Louisiana court . . . . The requirement that forum selection clauses be expressly, knowingly and voluntarily entered into and ratified after the occurrence of injury is a reasonable condition, and is appropriately geared toward Louisiana's public policy decision to allow its state courts to adjudicate claims brought within its jurisdiction.

*Sawicki v. K/S Stavanger Prince*, 802 So. 2d 598, 606 (La. 2001).

8

33. Defendants assert that while Plaintiffs waived the right to sue anywhere except in Minnesota due to the forum selection clause in the Employment Agreements, Defendants maintain their right to sue anywhere.

Defendants' First Amendment objections are insufficient to overcome Plaintiffs' demonstrated likelihood of success on the merits of invalidating the forum selection and choice of law clauses. The *Noerr-Pennington* doctrine confers federal antitrust immunity to parties exercising the First Amendment right to petition the government for redress of grievances. *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991). *Noerr-Pennington* immunity is generally raised as an affirmative defense to antitrust or tort claims based on the defendant's petitioning activities. *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000). In the instant case, Plaintiffs have not asserted any Sherman Act claims against Defendants, nor have Defendants adequately explained how either this declaratory judgment action or § 921(A)(2) imposes antitrust liability on Medtronic for petitioning the government for redress of their grievances in Minnesota. Moreover, the Court fails to see how an injunction would violate a First Amendment right under these circumstances. "District courts have discretion to enjoin the filing of related lawsuits in other U.S. district courts." *Mun. Energy Agency of Miss. v. Big Rivers Elec. Corp.*, 804 F.2d 338, 343 (5th Cir. 1986). With that authority in mind, the First Amendment cannot be interpreted to grant Defendants a constitutional right to prosecute a second lawsuit in another federal district, after one district court has already accepted jurisdiction over an earlier-filed case involving the same parties and issues.

Defendants' second constitutional argument—that, as applied, § 921 violates the dormant Commerce Clause, U.S. Const. art. I, § 8, cl. 3—is also insufficient to overcome Plaintiffs' demonstrated likelihood of success on the merits of invalidating the forum selection and choice

of law clauses. The first step in reviewing state statutes under the dormant Commerce Clause is to determine whether the statute "regulates evenhandedly with only incidental effects on interstate commerce, or discriminates against interstate commerce." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 499 (5th Cir. 2001) (citing *Oregon Waste Sys. Inc. v. Dep't of Envtl. Quality,* 511 U.S. 93, 98 (1994)). "If a restriction on commerce is discriminatory, it is virtually *per se* invalid." *Oregon Waste Sys.*, 511 U.S. at 99. On the other hand, "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

Defendants first argue that although § 921 is not facially discriminatory, it discriminates against out-of-state business "in practical effect." *Defs.' Opp'n* 9–12, Doc. 9; *Defs.' Suppl. Mem.* 5–7, Doc. 33. A statute discriminates against interstate commerce when it provides for "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Ford Motor*, 264 F.3d at 499. According to Defendants, the statute disproportionately burdens out-of-state employers by preventing them from litigating their disputes with employees where their principal place of business is located. *Defs.' Opp'n* 9–12, Doc. 9; *Defs.' Suppl. Mem.* 5–9, Doc. 33. Defendants argue that the statute does not place a similar burden on in-state employers because Louisiana employers are not prevented from litigating disputes with employees across the nation in Louisiana. *Id.* The Court finds this argument unpersuasive. Section 921(A)(2) applies to all employers—not just out-of-state employers—who employ Louisiana citizens and employees, whether those employers are based in Louisiana or elsewhere. The statute does not prohibit Medtronic from litigating in Minnesota and under the laws of Minnesota, so long as the

10

agreement is voluntarily entered into and ratified after the occurrence of the incident which gives rise to the litigation. Therefore, § 921 does not discriminate against out-of-state interests "in practical effect" because any effects on out-of-state interests are only incidental.

Having concluded that § 921 is nondiscriminatory, the Court must next determine whether § 921 effectuates a legitimate local interest, and if so, the statute will upheld "unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142. As the Louisiana Supreme Court has observed, § 921 serves a legitimate local interest "to allow Louisiana courts to adjudicate the claims of plaintiffs who have properly invoked their jurisdiction." *Sawicki v. K/S Stavanger Prince*, 802 So. 2d 598, 606 (La. 2001). There are two proffered burdens this statute imposes on interstate commerce: (1) the statute requires out-of-state employers to litigate in Louisiana; and (2) the Louisiana law, which disfavors non-competition agreements, will apply to govern disputes with Louisiana employees. As to the first, it is not an undue burden on interstate commerce to require an out-of-state employer to litigate in Louisiana when the employer is conducting business in Louisiana, hiring Louisiana employees, and selling to Louisiana customers.

The second burden, that Louisiana law may apply to govern disputes with a Louisiana employee, is mitigated by two aspects of § 921. First, as previously discussed, § 921(A)(2) does not totally prohibit choice of forum and choice of law clauses—out-of-state employers can enforce these clauses if employees agree to them after the incident giving rise to the dispute. Second, out-of-state employers can secure protection from Louisiana law against unwanted competition by merely complying with § 921(C), which allows out-of-state employers to enforce a non-competition agreement in Louisiana, so long as they merely meet the "drafting requirements" of § 921(C). *See* Jacob Ecker, Comment, *At the Breaking Point: Adapting Louisiana Employment*

11

*Noncompete Law to the Information Age*, 75 LA. L. REV. 1317, 133–36 (2015) (discussing the specificity requirements of § 921(C)). This drafting burden is not excessive in relation to the benefits Medtronic derives from the amount of business Medtronic conducts in Louisiana.

According to Defendants, Louisiana's prohibition on the choice of forum clause in Medtronic's Employee Agreement interferes with Medtronic's management of its workforce, and in so doing places an improper burden on interstate commerce. Defendants also impliedly contend that § 921 interferes with their ability to sell their FDA-approved products to customers in Louisiana. The Court disagrees. Section 921(A)(2) does not prevent Defendants from managing their workforce—Defendants are free to hire the employees of their choice, open the offices of their choice, ship products into Louisiana, and make sales and profits in Louisiana. Moreover, the statute does not regulate or implicate the FDA approval process, the payment for product with Medicare funds, FDA or Medicare regulations, or the shipping of products made outside of Louisiana into Louisiana. The statute only involves how post-employment activities of Louisiana-based employees' can be governed.

Accordingly, Plaintiffs have demonstrated a likelihood of success on the merits of this declaratory action invalidating the forum selection and choice of law clauses in their Employment Agreements.

### 2.   *Non-Competition Agreement*

Plaintiffs argue that the non-competition/non-solicitation clauses are void because (1) the clauses do not "specify" the parishes or municipalities where Plaintiffs are prohibited from competing or soliciting customers, and (2) the clauses seek to prevent Plaintiffs from competing

12

with entities other than their employer.[12] Meanwhile, Defendants argue that the non-competition agreement is valid and enforceable because Louisiana courts have held that covenants not to compete do not need to include the specific names of parishes.

The Louisiana statute governing non-competition agreements provides: "Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind . . . *shall be null and void*. However, [every agreement] which meets the exceptions as provided in this Section, shall be enforceable." § 23:921(A)(1) (emphasis added). Thus, non-competition agreements are unenforceable unless they fit within one of the statute's narrow exceptions. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So. 2d 294, 298 (La. 2001). The exception relevant to this case is contained within § 921(C), which provides: "Any person . . . who is employed as an . . . employee may agree with his employer to refrain from . . . soliciting customers of the employer *within a specified parish or parishes* . . . so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment." (emphasis added). In essence, § 921(C) provides "three overarching requirements for employer–employee noncompetes: (1) a two-year maximum duration, (2) a list of the areas in which the former employee is restrained, and (3) competition between the former employee and employer." Ecker, *supra*, at 1333.

As to the geographical limitation, there are two independent requirements: (a) the parishes where competition is restrained must be "specified" within the agreement itself; and (b) a substantive limit requiring non-competition agreements to be "limited in enforcement to parishes where the first employer actually carries on a like business therein." *Id.* at 1334–35 (internal

---

[12] Because the Court concludes that Plaintiffs have demonstrated a likelihood of success as to Plaintiffs' first argument, the Court need not address the second aspect of invalidity under § 921(C) asserted by Plaintiffs.

13

quotations and citations omitted). Regarding the specificity requirement, "[w]hat is important is that the geographic limitation be express and clearly discernable." *Vartech Sys., Inc. v. Hayden*, 951 So. 2d 247, 258 (La. Ct. App. 1st 2006). The limitation must allow the employee to "know on the front end what his potential restrictions might be and exactly what price he was being called upon to pay in exchange for employment." *Aon Risk Servs. of La., Inc. v. Ryan*, 807 So. 2d 1058, 1062 (La. Ct. App. 4th 2002) (invalidating a non-competition clause which covered "'whatever parishes, counties and municipalities the Company or Hall'. . . conducted business"); *see, e.g.*, *Johnson Controls, Inc. v. Guidry*, 724 F. Supp. 2d 612, 622 (W.D. La. July 12, 2010) ("Not only does the clause fail to specifically list the parishes that it covers, it also fails to reference or list any other data from which its geographical scope could be determined."); *Action Revenue Recovery, L.L.C. v. eBusiness Grp., L.L.C.*, 17 So. 3d 999, 1003 (La. Ct. App. 2d Cir. 2009) (rejecting a non-competition clause which applied "to all parishes or counties ARR/FAC covers on a like business in said parishes or counties").

In the Employment Agreements,[13] the geographic scope of the non-competition clause refers to: (1) "the Louisiana Parishes and/or Municipalities that are included within [Employee's] identified Medtronic sales territory . . . during the last one (1) year of [his] employment with Medtronic," and (2) "the Louisiana Parishes and/or Municipalities that Medtronic engaged in business within and that [Employee] services . . . supported during the last one (1) year of [his] employment." *La. Employment Agreement* 1, Doc. 32-2. The Court finds that the geographic

---

[13] There are two separate Employment Agreements at issue here—Waguespack's & Powell's Employment Agreements are entitled "Louisiana Employee Agreement," while Lindsey's Employment Agreement is entitled "Employee Agreement." In Lindsey's Employment Agreement, the non-competition clause contains no territory whatsoever, which clearly violates § 921(C). Defendants do not specifically address this deficiency, instead Defendants address Lindsey's Employment Agreement as if it were the same as the other two employees' agreements. It suffices to say that if Waguespack's and Powell's more detailed Employment Agreements are invalid under § 921(C), then Lindsey's less specific Employment Agreement is also invalid under § 921(C). For the sake of efficiency, the Court will simply refer to all three Plaintiffs' Employment Agreements collectively.

limitations are not "express" because the Employment Agreements did not list or otherwise identify the parishes in which Plaintiffs were prohibited from competing in. Also, the geographic limitation is not "clearly discernible" because there was no way for Plaintiffs to determine—on the front end—what their potential restrictions would be if he decided to leave Medtronic in the future.

Defendants point out that Louisiana courts of appeals have enforced geographic limitations that did not specifically identify the applicable parishes by name because the geographic limitations were "identifiable." *Petrol. Helicopters, Inc. v. Untereker*, 731 So. 2d 965, 968 (La. Ct. App. 3rd 1999); *Allied Bruce Terminix Co., Inc. v. Guillory*, 649 So. 2d 652, 652–53 (La. Ct. App. 3rd 1994). According to Defendants, the Louisiana Representatives knew the territories they serviced for Medtronic, and therefore the non-competition agreement's geographic limitations were "identifiable." However, the cases cited by Defendants are from Louisiana's Third Circuit Court of Appeals, which appears to be an outlier circuit. Indeed, other Louisiana courts of appeals have questioned the Third Circuit's reasoning,[14] and expressly held that "whatever parishes, counties or municipalities" in which the employer conducted business was not sufficiently specific to be enforceable under § 921(C). *Ryan*, 807 So. 2d at 1060; *see also Hayden*, 951 So. 2d at 258. This Court agrees with the *Ryan* court's analysis, and also finds the specificity requirement espoused by Louisiana's First and Fourth Circuit Courts of Appeals to be more persuasive and

---

[14] The Fourth Circuit has stated:
> We beg to differ with the reasoning of our learned brothers of the Third Circuit. We find that the clear language of LSA-R.S. 23:921 requires that the agreement specify the parishes, etc., ***and*** that the employer must do business in those parishes. If this Court were to adopt the position espoused by the plaintiff, there would have been no reason for the legislature to have included the requirement that the parishes be specified. It would have been sufficient for the legislature to have simply stated that the parties could enter into a non-compete agreement referring to "those parishes in which the employer does business" in general terms only, without naming or listing those parishes. We are required to give effect to the word "specified" where to do so would not lead to absurd consequences.

*Ryan*, 807 So. 2d at 1060–61.

15

indicative of Louisiana law. Under those courts' analysis, requiring the geographic limitations to be express and clearly discernible, Plaintiffs have demonstrated a likelihood of success on the merits of their action seeking a declaration that the non-competition agreements contained in their Employment Agreements are invalid.

### B.     Remaining Preliminary Injunction Prerequisites

Next, the Court must determine whether Plaintiffs have established that they meet the remaining prerequisites for a preliminary injunction—that Plaintiffs will suffer irreparable injury if the injunction is not granted, that the irreparable injury outweighs the harm to the defendant, and that granting the preliminary injunction will not disserve the public interest. *Cardoni*, 805 F.3d at 579 (5th Cir. 2015). Defendants contest the irreparable injury, but otherwise do not address the third and fourth prerequisites.

First, the Court finds that Plaintiffs will suffer irreparable harm if Defendants are allowed to prosecute a suit in any forum that seeks to enforce the non-competition agreement contained in the Employment Agreements. The parties do not dispute that a Minnesota court will apply Minnesota law and therefore likely find that the noncompetition agreements are enforceable under Minnesota law.[15] *See Pls.' Supp. Mem.* 17, Doc. 4-1; *Defs.' Opp'n* 14, Doc. 9; *Defs.' Suppl. Mem.* 9 n.10, Doc. 33. As a result, Plaintiffs will be prohibited from competing against Defendants, in contravention of § 921 and Louisiana's strong public policy restricting overly broad non-competition agreements.[16] Given that Plaintiffs have established a likelihood of success on the merits that they are not bound to litigate in Minnesota, nor are they bound by the non-competition

---

[15] The Court assumes, for the purposes of this ruling, that this assertion is correct.
[16] The Louisiana Supreme Court has described this "strong public policy" as a "state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden." *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So. 2d 294, 298 (La. 2001).

agreements at issue, they have demonstrated they will suffer irreparable harm if forced to litigate this case in any other forum.[17]

Second, the balance of hardships weigh in Plaintiffs' favor. Plaintiffs assert that the only harm Defendants might suffer is that it will be required to comply with labor laws in a state from which it has benefitted from sales. *Pls.' Supp. Mem.* 17–18, Doc. 4-1. The Court agrees with Plaintiffs that such minor harm pales in comparison to the hardship that they and their families would suffer if forced to litigate in and under the laws of a state in which they have never worked and denied the protections afforded to Louisiana employees.

Finally, issuing the preliminary injunction will not disserve the public interest. Prohibiting Defendants from proceeding with an action in a different forum will both conserve judicial resources, and uphold Louisiana's strong public policy against overbroad non-competition agreements. Accordingly, Plaintiffs have satisfied the remaining preliminary injunction prerequisites.

## IV.   MOTION TO TRANSFER VENUE PURSUANT TO § 1404(A)

28 U.S.C. § 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." Under federal law, forum-selection clauses are presumed enforceable, and the party resisting enforcement bears a heavy burden of proof.[18] *Haynsworth v.*

---

[17] Although under the Employment Agreements the Plaintiffs are entitled to compensation from Defendants for the duration of the non-competition period, the Court finds that such compensation is insufficient to overcome Plaintiffs' likelihood of success on the merits of this case, as well as Louisiana's strong public policy against these type of agreements. Moreover, such compensation does not change the fact that the non-competition clause prevents Plaintiffs from receiving profits above and beyond the baseline severance salary provided by Medtronic.

[18] Defendants cite the Supreme Court decision in *Atlantic Marine* for the proposition that the forum selection clauses in the Employment Agreements must be given controlling weight. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013). However, in *Atlantic Marine*, the Supreme Court repeatedly emphasized that its analysis presupposed a valid forum selection clause. *Id.* at 581 n.5. Post-*Atlantic Marine*, courts continue to analyze whether the forum selection clause is unreasonable because its enforcement would contravene a strong public policy of the forum state. *In re Union Elec. Co.*, 787 F.3d 903, 909 (8th Cir. 2015).

*The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997). However, the presumption of enforceability of a forum-selection clause may be overcome by a clear showing that the clause is unreasonable under the circumstances; a clause is unreasonable when its enforcement would contravene a strong public policy of the forum state. *Id.* (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 17 (1972) & *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594 (1991)). As discussed above, Plaintiffs did not ratify the forum selection clauses in the Employment Agreements after they left Medtronic, and enforcement of the clauses would contravene a strong public policy of Louisiana. The case has a stronger connection to Louisiana than Minnesota, and therefore the suit will stay in the Middle District of Louisiana. The Motion to Transfer (Doc. 10) is **DENIED**.

V. **CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Preliminary Injunction (16-cv-241: Doc. 4; 16-cv-242: Doc. 5; 16-cv-243: Doc. 5) is **GRANTED**, and Defendants' Motion to Transfer (16-cv-241: Doc. 17; 16-cv-242: Doc. 10; 16-cv-243: Doc. 19) is **DENIED**.

Plaintiffs shall file a proposed order in conformity herewith, after attaining approval from Defendants as to form, within 3 days of the date of this ruling.

Signed in Baton Rouge, Louisiana, on May 5, 2016.

　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　**JUDGE JAMES J. BRADY**
　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**
　　　　　　　　　　　　　　　　**MIDDLE DISTRICT OF LOUISIANA**